UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

EDWARD PAINTER

                                      Plaintiff,

             v.

TURING PHARMACEUTICALS AG, TURING
PHARMACEUTICALS, LLC a/k/a VYERA
PHARMACEUTICALS, LLC, and MARTIN SHKRELI

                                 Defendants,

------------------------------------------------------------------------x

Index No:
**VERIFIED COMPLAINT**

**Jury Trial Demanded**

Plaintiff, Edward Painter, by and through his attorneys, Lally & Misir, LLP, as and for his Complaint against the Defendants herein, alleges, upon personal knowledge and upon information and belief as to all other matters:

## JURISDICTION AND VENUE

1. This is a civil action brought pursuant to Section 10b of the Securities Exchange Act of 1934, Rule 10b-5, codified at 17 CFR 240.10b-5, other state laws, and any other cause of action which can be inferred from the facts set forth herein, to redress violation of the terms, conditions and privileges of employment of Plaintiff by the Defendants.

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper pursuant to 28 U.S.C. § 1391.

4. Plaintiff is entitled to a jury trial.

## PARTIES

5. That the Plaintiff, Edward Painter, is a resident of the State of New York and has his place of business in Nassau County, State of New York.

1

6. That at all times mentioned herein, the Defendant, Turing Pharmaceuticals AG ("Turing") is a Switzerland Corporation, doing business and maintaining offices in New York, under the trademark names of "Turing" and "Vyera" Pharmaceuticals.

7. That at all times mentioned herein, the Defendant, Martin Shkreli, is a resident of the State of New York.

8. That at all times mentioned herein, Turing Pharmaceuticals, LLC and Vyera Pharmaceuticals, LLC are trademarks and operate under Turing Pharmaceuticals AG.

## STATEMENT OF RELEVANT FACTS

9. The Plaintiff, Mr. Painter, was employed with the Defendants from June 2015 through February 2016, and made investments in Turing's stocks, totaling $275,000.00.

10. In November 2014, Mr. Painter, introduced Savant HWP ("Savant") to Defendant, Martin Shkreli, former chief executive officer ("CEO") of Turing, and Patrick Crutcher, head of Turing's business development at the time.

11. Savant was founded in 2009 to develop pharmaceutical products, and to focus primarily on addiction medicine and neglected diseases.  At the time of Mr. Painter's introduction of Savant to the Defendant, Savant was involved with the production of a drug named Benznidazole, which is an antiparasitic medication used in the treatment of Chagas disease.  The Defendants agreed to pay Mr. Painter a 5% commission on revenues – which commissions were expected to be in excess of one million ($1,000,000.00) dollars - from the acquisition and sale of the drug Benznidazole.

12. On or about June 6, 2015, the Plaintiff, Mr. Painter, entered in to an employment agreement with Turing.  Mr. Painter was employed as Director of Investor Relations at Turing.  (See Exhibit "A", Employment Contract).

13. In July of 2015, three (3) weeks after being hired by Turing, Mr. Painter was pressured and directed by management of Turing, including the CEO - Mr. Shkreli, to invest $150,000.00 of his personal family funds, in Turing.  It was stated by Mr. Shkreli and other Turing management that such an investment by Mr. Painter was required and would affect his terms of employment.  These representations made it clear to Mr. Painter that his terms of employment were very much connected to his investment in Turing's stock.

14. The securities under this stock purchase agreement were never delivered to the Plaintiff, Mr. Painter.

15. In August 2015, Mr. Painter reintroduced Savant and the business development idea to the Defendants.  Mr. Painter was again, promised by the Defendants that he would receive 5% royalties associated with the sale of the drug Benznidazole as a result of the transaction with Savant.

16. In September 2015, Turing acquired the drug Daraprim, which is used to treat Toxoplasmosis in HIV/AIDs patients.  The Defendants increased the price of the drug Daraprim by 5,000% -from $13.50 to $750 per tablet.  This price increase caused massive negative publicity for Turing, and damaged the value of the Plaintiff's investments in Turing's stocks.

17. Prior to the acquisition of Daraprim, the Defendants specifically represented to the Plaintiff, Mr. Painter, and other Turing investors that the acquisition of the drug, Daraprim, would not be accompanied by an extraordinary increase in the price of the drug.  The Defendant, Mr. Shkreli, told investors that Turing would ensure that patient access to the drug Daraprim would not be delayed or restricted in any way.  He

represented to Mr. Painter and other investors that Turing would not take any actions which could be construed as anti-competitive.

18. On or about November 23, 2015, the Defendants began focusing on the development of the drug Benznidazole for Chagas Disease with discussions with Savant's CEO, Steven Hurst.

19. In November 2015, Mr. Shkreli purchased and was named as the chief executive officer of KaloBios Pharmaceutical ("KaloBios") company.

20. The Defendants falsely represented to Mr. Painter that Mr. Shkreli would dedicate 100% of his time to building Turing. This was not true. Instead, the Defendants were misappropriating Turing resources for Defendant, Martin Shkreli's, own benefit. More specifically, Mr. Shkreli used Turing employees to perform research on companies for which he sold short the company stock in his personal account for very large gains.

21. The Defendant, Mr. Shkreli, used Turing resources and employees to manage KaloBios after taking control of KaloBios in his personal account.

22. The Defendants then decided to "transfer" the purchase deal with Savant, to KaloBios, rather than Turing. Neither KaloBios, nor the Defendants made any compensation to Turing for this transfer.

23. In December 2015, Mr. Painter was forced by the Defendants to invest more of his personal funds into KaloBios. The Plaintiff was told that his employment with Turing was dependent on whether he made an investment in KaloBios. The Plaintiff was repeatedly threatened with losing his position at Turing if he did not invest in KaloBios. The Plaintiff, Mr. Painter, at this time, invested $125,000.00 of his personal funds into

KaloBios, and the Defendants assured the Plaintiff that his royalty interest in Benznidazole would remain at 5%.

24. The Defendant, Mr. Shkreli, personally benefitted from the KaloBios transaction with Savant. Upon information and belief, Mr. Shkreli had purchased KaloBios stock for nominal value, and after the Savant deal, he sold his stocks in KaloBios for over one million ($1,000,000.00) dollars.

25. The Defendants misled Mr. Painter and other Turing investors with additional statements including: 1) that Mr. Shkreli was making a commitment to sell all of his personal KaloBios stock to Turing at the price he paid; 2) that Mr. Shkreli was making a commitment to compensate Turing for any value transferred from to KaloBios from Turing. These statements were false.

26. In December 2015, the Defendant, Mr. Shkreli again agreed to pay Mr. Painter in front of three (3) Turing employees – Eliseo Salinas, Michael Smith, and Sridhar Vempati – that Mr. Painter would receive a 5% royalty on all revenues, including the value of an FDA priority review voucher associated with the drug Benznidazole - connected with the Savant transaction.

27. In December 2015, Mr. Shkreli was arrested by the FBI pursuant to a federal indictment in the U.S. District Court for the Eastern District of New York filed against him, charging him with securities fraud.

Mr. Shkreli's fraud was described by the U.S. Attorney, as a "Ponzi-style scheme involved recycling money from new investors and passing it off to other investors in the guise of profits, or giving it to dissatisfied investors who had asked for their money back." Lucy Bayly and Phil McCausland, *'Pharma Bro' Martin Shkreli Found Guilty of Securities Fraud,*

NBC News, August 4, 2017, <https://www.nbcnews.com/business/business news/pharma-bro-martin-shkreli-found-guilty-securities-fraud-n787351> (last visited Dec 28, 2017).

28. Following his arrest, Mr. Shkreli was terminated as CEO of KaloBios.

29. On December 29, 2015, KaloBios filed for Chapter 11 bankruptcy.

30. In February 2016, Mr. Shkreli was terminated as CEO of Turing.

31. In February 2016, the Plaintiff, Mr. Painter, was fired from Turing, without cause, and the Defendants refused to pay his severance of $50,000.00, or to deliver his securities, or to pay the commissions owed to him.

32. On or about August 4, 2017, the Defendant, Mr. Shkreli, was convicted of securities fraud and conspiracy to commit securities fraud in the Federal Court of the Eastern District of New York.

33. In September 2017, Turing Pharmaceuticals LLC changed its name to Vyera Pharmaceuticals.

## AS AND FOR THE FIRST CAUSE OF ACTION – SECURITIES FRAUD IN VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934

34. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein.

35. This claim is authorized and instituted pursuant to Section 10(b) of the Securities Exchange Act, Rule 10b-5, based upon the actions of the Defendants.

36. Specifically, Mr. Painter complains that the Defendants made material misrepresentations and omissions to induce investments by the Plaintiff in its securities causing him to suffer substantial injury and damages.

37. "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."    17 CFR 240.10b-5

38. The Defendants induced the Plaintiff, Mr. Painter, to invest in Turing's stocks by making material misrepresentations and omissions about the performance of Turing and its assets.

39. The Defendants also induced investments by the Plaintiff by making material misrepresentations and omissions regarding its CEO, Martin Shkreli, as being a successful hedge fund founder and manager.  The Defendant, Mr. Shkreli, has been convicted in federal court of two securities fraud charges and one count of conspiracy to commit securities fraud in relation to his hedge funds - MSMB Capital and MSMB Healthcare.

40. The Defendants were running a fraudulent investor scheme by taking money from new investors and passing it off to other investors in the guise of profits.

41. The Defendants falsely represented to the Plaintiff numerous times - including November 2014, August 2015, November 2015 and December 2015 - that he would receive 5% royalties on all revenues from the acquisition and sale of the drug Benznidazole from Savant.

42. The Defendants transferred the transaction with Savant to KaloBios.  Neither KaloBios, nor the Defendants, made any compensation to Turing for the value of the transaction.

43. The Defendant, Mr. Shkreli, personally benefitted from the KaloBios transaction with Savant.  Upon information and belief, Mr. Shkreli had purchased KaloBios stock for nominal value, and after the Savant deal he sold his stocks in KaloBios for over one million ($1,000,000.00) dollars.

44. The Defendants knowingly falsely represented to Mr. Painter, that Mr. Shkreli would dedicate 100% of his time to building Turing Pharmaceuticals.  This was not true. Instead, the Defendants were misappropriating Turing resources for the Defendant, Mr. Shkreli's, own benefit.  More specifically, Mr. Shkreli used Turing employees to perform research on companies for which he sold short the company stock in his personal account for very large gains.

45. The Defendants made fraudulent statements to the Plaintiff, Mr. Painter, and other Turing investors including: 1) that Mr. Shkreli was making a commitment to sell all of his personal KaloBios stock to Turing at the price he paid; 2) that Mr. Shkreli was making a commitment to compensate Turing for any value transferred from to KaloBios from Turing.  These statements were false.

46. The Plaintiff, Mr. Painter, reasonably relied on the misrepresentations of the Defendant, Turing, and invested $275,000.00 of his personal funds into Turing and Defendants never delivered the securities.

47. The Plaintiff, Mr. Painter, suffered monetary damages in the loss of employment, loss of expected income, loss of commission earned, and loss of investments in securities.

8

## AS AND FOR THE SECOND CAUSE OF ACTION – BREACH OF CONTRACT

48. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein.

49. This claim is authorized and instituted pursuant to New York law, based upon the actions of Defendants.  Specifically, Mr. Painter complains that the Defendants breached their employment contract causing Mr. Painter to suffer substantial injury and damages.

50. The Plaintiff, Mr. Painter, entered into an Employment Contract with the Defendants on June 6, 2015.

51. The Plaintiff, Mr. Painter, performed all his duties pursuant to the Employment Contract.

52. The Defendant, Turing, violated the Employment Contract, by refusing to compensate Mr. Painter for the commissions he earned, and refusing to deliver his securities.

53. In February 2016, the Defendants terminated Mr. Painter's employment without cause.

54. The Employment Contract reads in relevant part: "In the event the Company terminates the Executive's employment other than for Cause, or the Executive resigns his/her employment for "Good Reason", the Company shall pay the Executive $50,000.00 in severance…"  (See Exhibit "A", page 4).

55. The Defendants refused to make any severance payment to the Plaintiff, Mr. Painter, in breach of their Employment Contract.

56. The Plaintiff, Mr. Painter, suffered monetary damages in the loss of employment, loss of expected income, loss of commission earned, and loss of investments in securities.

## AS AND FOR THE THIRD CAUSE OF ACTION – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

57. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein.

58. This claim is authorized and instituted pursuant to New York law, based upon the tortious actions of the Defendants. Specifically, Mr. Painter complains that Defendants breached the covenant of good faith and fair dealing implied in Mr. Painter's employment contract causing him to suffer substantial injury and damages.

59. "Under New York law, there is a covenant of good faith and fair dealing implied in all contracts." 511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 746 N.Y.S.2d 131 (2002). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, and may thus be breached by conduct not expressly forbidden by any contractual provision." P.T.& L. Contr. Corp. v. Trataros Constr., Inc., 29 A.D.3d 763, 816 N.Y.S.2d 508 (2d Dep't 2006); See Hbouss v. Coca-Cola Enters., 2006 U.S. Dist. LEXIS 54958, 2006 WL 2285598 (S.D.N.Y. Aug. 9, 2006); See also Travelers Indem. Co. v. CDL Hotels USA, Inc., 322 F. Supp. 2d 482, 2004 U.S. Dist. LEXIS 11381 (S.D.N.Y. 2004).

60. The Defendants breached their duty of good-faith and fair dealing.

61. The Defendants continually led Mr. Painter on, with fraudulent misrepresentations.

62. Specifically, the Defendants falsely represented to Mr. Painter that Mr. Shkreli would dedicate 100% of his time to building Turing Pharmaceuticals. Instead, the Defendants were misappropriating Turing resources for the Defendant, Mr. Shkreli's, own benefit.

More specifically, Mr. Shkreli used Turing employees to perform research on companies for which he sold short the company stock in his personal account for very large gains.

63. The Plaintiff's employment was eventually terminated by the Defendant without cause.

64. The Defendants injured the Plaintiff's right to the income, delivery of securities, and commissions that he was obligated to receive under the employment contract.

65. The Defendants breach of the covenant of good faith and fair dealing – terminating the Plaintiff's employment without cause, denying payment of severance, denying payment of commissions earned by the Plaintiff, and delivery of securities - caused the Plaintiff financial loss and difficulties.

## AS AND FOR THE FOURTH CAUSE OF ACTION – FRAUD AND MISREPRESENTATION

66. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein.

67. This claim is authorized and instituted pursuant to New York law, based upon the tortious actions of Defendant Turing.  Specifically, Mr. Painter complains of Defendant Turing knowing misrepresentations of material facts with the intent to deceive him, and that upon his reliance on those facts, he suffered pecuniary loss. See Clearmont Prop., LLC v. Eisner, 58 A.D.3d 1052, 1053, 872 N.Y.S.2d 725, 727, 2009 N.Y. App. Div. LEXIS 286, *1, 2009 NY Slip Op 292, 1 (N.Y. App. Div. 3d Dep't 2009).

68. The Plaintiff, Mr. Painter, invested $275,000.00 of his personal funds into the Defendant, Turing.

69. The Defendants made material fraudulent statements and omissions concerning Turing's CEO, Mr. Shkreli, and his experience with running two (2) hedge funds. Mr. Shkreli was not successful in operating his hedge funds, MSMB Capital and MSMB Healthcare, rather he was running a Ponzi-scheme fraud. He was convicted of securities fraud in Federal Court in the Eastern District of New York in August 2017.

70. The Defendants falsely represented to the Plaintiff numerous times - including November 2014, August 2015, November 2015 and December 2015 - that he would receive 5% royalties on all revenues from the acquisition and sale of the drug Benznidazole from Savant, which was expected to be over one million ($1,000,000.00) dollars.

71. The Defendants transferred the transaction with Savant to KaloBios. Neither KaloBios, nor the Defendants, made any compensation to Turing for the value of the transaction.

72. The Defendant, Mr. Shkreli, personally benefitted from the KaloBios transaction with Savant. Upon information and belief, Mr. Shkreli had purchased KaloBios stock for nominal value, and after the Savant deal he sold his stocks in KaloBios for over one million ($1,000,000.00) dollars.

73. The Defendants falsely represented to the Plaintiff, Mr. Painter, that Mr. Shkreli would dedicate 100% of his time to building Turing Pharmaceuticals. This was not true. Instead, the Defendants were misappropriating Turing resources for the Defendant, Mr. Shkreli's, own benefit. More specifically, Mr. Shkreli used Turing employees to perform research on companies for which he sold short the company stock in his personal account for very large gains.

74. The Defendants made fraudulent statements to the Plaintiff, Mr. Painter, and other Turing investors including: 1) that Mr. Shkreli was making a commitment to sell all of his

personal KaloBios stock to Turing at the price he paid; 2) that Mr. Shkreli was making a commitment to compensate Turing for any value transferred from to KaloBios from Turing. These statements were false.

75. That the Defendants were running a Ponzi scheme fraud, which involved recycling money from new investors and passing it off to other investors in the guise of profits.

76. The Defendant, Mr. Shkreli, has been convicted of securities fraud in the U.S. District Court of the Eastern District of New York.

77. That as a result of the Defendants' fraud, the Plaintiff suffered monetary damages in the loss of employment, loss of expected income, loss of commission earned, and loss of investments in securities.

## AS AND FOR THE FIFTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION

78. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein.

79. This claim is authorized and instituted pursuant to New York law, based upon the tortious actions of Defendant Turing.

80. Specifically, Mr. Painter and the Defendants had a privity-like relationship pursuant to their Employment Contract and Mr. Painter's investments in Turing, and he complains of Defendants negligently misrepresenting material facts with the intent to deceive him, and that upon his reasonable reliance on those facts, he suffered pecuniary loss. A.O. Acquisition Corp. v. Stavitsky, 8 N.Y.3d 144, 148, 863 N.E.2d 585, 587, 831 N.Y.S.2d 364, 366, 2007 N.Y. LEXIS 113, *5, 2007 NY Slip Op 1196, 2 (N.Y. Feb. 13, 2007); see Empire One Telecom., Inc. v. Verizon N.Y., Inc., 26 Misc. 3d 541, 560-561, 888

N.Y.S.2d 714, 730-731, 2009 N.Y. Misc. LEXIS 2914, *36, 2009 NY Slip Op 29428, 14-15 (N.Y. Sup. Ct. Oct. 22, 2009).

81. The Plaintiff, Mr. Painter, invested $275,000.00 of his personal funds into the Defendant, Turing.

82. The Defendants made material fraudulent statements and omissions concerning its CEO, Mr. Shkreli, and his experience with running two (2) hedge funds.  Mr. Shkreli was not successful in operating his hedge funds, MSMB Capital and MSMB Healthcare, rather he was running a Ponzi-scheme fraud.  He was convicted of securities fraud in the Eastern District of New York in August 2017.

83. The Defendants had a special duty to the Plaintiff – an investor in Turing's stocks – to provide correct information as to investments in Turing.

84. The Defendants falsely represented to the Plaintiff numerous times - including November 2014, August 2015, November 2015 and December 2015 - that he would receive 5% royalties on all revenues from the acquisition and sale of the drug Benznidazole from Savant, which was expected to be over one million ($1,000,000.00) dollars.

85. The Defendants transferred the transaction with Savant to KaloBios.  Neither KaloBios, nor the Defendants, made any compensation to Turing for the value of the transaction.

86. The Defendant, Mr. Shkreli, personally benefitted from the KaloBios transaction with Savant.  Upon information and belief, Mr. Shkreli had purchased KaloBios stock for nominal value, and after the Savant deal he sold his stocks in KaloBios for over one million ($1,000,000.00) dollars.

87. The Defendants falsely represented to the Plaintiff, Mr. Painter, that Mr. Shkreli would dedicate 100% of his time to building Turing Pharmaceuticals.  This was not true.

Instead, Mr. Shkreli was misappropriating Turing resources for his own benefit.  More specifically, Mr. Shkreli used Turing employees to perform research on companies for which he sold short the company stock in his personal account for very large gains.

88. The Defendants made fraudulent statements to the Plaintiff, Mr. Painter, and other Turing investors including: 1) that Mr. Shkreli was making a commitment to sell all of his personal KaloBios stock to Turing at the price he paid; 2) that Mr. Shkreli was making a commitment to compensate Turing for any value transferred from to KaloBios from Turing.  These statements were false.

89. That the Defendants  were running a Ponzi scheme fraud, which involved recycling money from new investors and passing it off to other investors in the guise of profits.

90. The Defendant, Mr. Shkreli, has been convicted of securities fraud in the U.S. District Court of the Eastern District of New York.

91. That as a result of the Defendants' fraud, the Plaintiff suffered monetary damages in the loss of employment, loss of expected income, loss of commissions earned, and loss of investments in securities.

## AS AND FOR THE SIXTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTIES

92. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein.

93. This claim is authorized and instituted pursuant to New York law, based upon the tortious actions of Defendant Turing.

94. Specifically, Mr. Painter complains that the Defendants had a fiduciary relationship with the Plaintiff, and the Defendants' misconduct – securities fraud, fraudulent misrepresentations, negligent misrepresentations, and breach of contract – resulted in Mr.

Painter suffering monetary damages. <u>See</u> <u>Kurtzman v. Bergstol</u>, 40 A.D.3d 588, 590, 835 N.Y.S.2d 644 (2nd Dep't 2007); <u>see</u> <u>also</u> <u>Pokoik v. Pokoik</u>, 982 N.Y.S.2d 67, 70, 115 A.D.3d 428 (1st Dep't 2014).

95. The Defendants had a fiduciary relationship to the Plaintiff based on the Plaintiff's investments totaling $275,000.00 in the Defendant, Turing.

96. The Defendant had a duty to provide the Plaintiff with correct information, and to use the investments for the benefit of Turing.  Instead the Defendant, breached their fiduciary duties, and used investments in Turing to fund personal gains by Turing's CEO – the Defendant, Mr. Shkreli.

97. The Defendant breached its fiduciaries duties to the Plaintiff, Mr. Painter, by knowingly making continuous fraudulent and negligent misrepresentations to the Plaintiff.

98. That as a result of the Defendants' breach of fiduciary duties, the Plaintiff suffered monetary damages in the loss of employment, loss of expected income, loss of commission earned, and loss of investments in securities.

16

WHEREFORE, Plaintiff, Edward Painter, demands judgment against the Defendants, Turing Pharmaceuticals AG and Martin Shkreli, jointly and severally, in the amount of $1,275,000.00 for fraudulent securities investments and for loss in commissions. It is further requested that this Court grant attorneys' fees of no less than one hundred and fifty thousand ($150,000.00) dollars and the costs and disbursements of this action, and for such other and further relief as to this Court may seem just and proper.

Dated: December 28, 2017

Respectfully Submitted

/s/ Grant Lally

Grant M. Lally
Lally & Misir, LLP
*Attorneys for Plaintiff*
220 Old Country Road
Mineola, NY, 11501
516-741-2666