UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
EDWARD PAINTER,

                Plaintiff,            NOT FOR PUBLICATION
                                                        **MEMORANDUM & ORDER**
   -against-                         No. 17-CV-07558 (CBA)(LB)

TURING PHARMACEUTICALS, LLC a/k/a
VYERA PHARMACUETICALS, LLC; and
MARTIN SHKRELI,

                Defendants.
----------------------------------------------------------x

**AMON, United States District Judge:**

        Plaintiff Edward Painter initiated this action against Defendants "to redress violation of the terms, conditions and privileges of employment of [Painter] by Defendants." (ECF Docket Entry ("D.E") # 1 ("Compl.") ¶ 1.) Although Painter later amended his complaint to remove the claims related to his employment, (see generally D.E. # 38 ("Am. Compl.")), Defendants counterclaim that Painter's initiation of this lawsuit violated his Separation Agreement, which released Defendants from all claims related to Painter's employment. (D.E. # 48 ("Defs. Ans. & Counterclaim") ¶¶ 158–164.) Before the Court is Plaintiff's motion to dismiss Defendants' counterclaim, and for the reasons stated below, the motion is DENIED.

## BACKGROUND

        On December 28, 2017, Plaintiff Edward Painter filed a complaint against his former employer Turing Pharmaceuticals, LLC[1] and its principal Martin Shkreli, alleging various frauds and breaches of contract. (See generally Compl.) The original complaint alleged breach of contract and breach of the implied covenant of good faith and fair dealing based on Painter's

---

[1] According to Defendants' answer, "Vyera, formerly known as Turing Pharmaceuticals LLC, is a Delaware limited liability company doing business and maintaining an office in New York, New York." (Defs. Ans. & Counterclaim ¶ 6.) In this Memorandum and Order, the Court uses "Vyera" and "Turing" interchangeably.

1

employment with Defendants. Specifically, Painter's breach of contract claim was based on the fact that Defendants "violated the Employment Contract, by refusing to compensate Mr. Painter for the commissions he earned, and refusing to deliver his securities," as well as terminating him without cause and then refusing to pay his severance. (Id. ¶¶ 48–56.) Similarly, Painter alleged that Defendants breached the implied covenant of good faith and fair dealing by "terminating [his] employment without cause, denying payment of severance, denying payment of commissions earned by the Plaintiff, and delivery of securities." (Id. ¶¶ 57–65.) The original complaint also contained allegations related to Painter's purchase of securities from Turing (the "Turing Agreement") and an alleged commission deal entered into between Painter and Turing regarding the sale of the drug Benznidazole (the "Savant Deal"). (Id. ¶¶ 1–33.)

On December 6, 2018, Defendants moved to dismiss the original complaint based on two previously undisclosed agreements between the parties. (D.E. ## 33, 34, 35.) Defendants first argued for dismissal of Painter's claims based on a Separation Agreement, (D.E. # 35 at 4–9), which released Defendants from "all claims, actions and causes of action . . . arising out of or related to [Painter's] employment and termination thereof" in exchange for $100,000 (the "Separation Payment") paid to Painter, (D.E. # 35-2 ("Sep. Agmt.") at 1, 3). The Separation Agreement also provided that if an action were filed in violation of the Separation Agreement, "it shall be dismissed with prejudice upon presentation of this Separation Agreement and [Painter] shall reimburse Turing for the costs, including attorneys' fees and costs, of defending any such action." (Id. at 4.) Defendants argued in the alternative that the Court should compel arbitration of Painter's claims based on his Employment Agreement, (D.E. # 35 at 9–11), which required arbitration of "any claim or dispute related to [Painter's] employment" and "disputes arising out of or related to the employment relationship," (D.E. # 35-1 ("Employ. Agmt.") at 9–10).

In response to disclosure of the Separation Agreement and Employment Agreement, Painter conceded that "the alleged Separation Agreement may limit [his] employment claims," but indicated that he was "respectfully withdrawing those claims, and cross-moving this Court to allow [him] to amend [his] Complaint." (D.E. # 32 at 11.) Painter filed an amended complaint on February 20, 2019. (Am. Compl.) The allegations in the amended complaint stem from the Savant Deal, the Turing Agreement, and an agreement to purchase securities in KaloBios (the "KaloBios Agreement"), a company controlled by Shkreli.[2] Defendants maintained that the amended complaint should nevertheless be dismissed or compelled to arbitration, arguing that "Mr. Painter seeks to recover the same alleged damages [as in the original complaint] but no longer contends that his claims are employment-related." (D.E. # 39 at 3.) In a Memorandum and Order dated September 26, 2019, this Court denied Defendants' motion on the grounds that Painter's claims sounding in securities fraud, fraud and misrepresentation, contract or quasi-contract, and breach of fiduciary duty did not arise out of or relate to his employment with Defendants. (D.E. # 43 at 11–16.) The Court found that those claims were "premised on [Painter's] investor/investee relationship with Turing," rather than his employment relationship with Turing, and therefore were not barred by either the release of claims in the Separation Agreement or the arbitration clause in the Employment Agreement.[3] (Id. at 15, see also id. at 14, 16.)

On November 11, 2019, Defendants answered the amended complaint and counterclaimed that "Painter's claims against [Defendants] constitute a material breach of the Separation Agreement." (Defs. Ans. & Counterclaim ¶ 163.) Defendants "seek[] to be repaid the $100,000 Separation Payment due to Painter's breach of the Separation Agreement," as well as "attorneys'

---

[2] The Court assumes familiarity with the three transactions, which are described in full in this Court's Memorandum and Order dated September 26, 2019. (D.E. # 43 at 3–5.)

[3] The Court granted Defendants' motion to dismiss Painter's RICO claims on the grounds that they were barred by 18 U.S.C. § 1964(c). (D.E. # 43 at 16–19.)

3

fees and costs for defending this action." (Id. ¶¶ 164, 188.) On December 4, 2019,[4] Painter requested a pre-motion conference on his anticipated motion to dismiss Defendants' counterclaim. (D.E. # 51.) It is not clear from Defendants' papers whether the basis of the counterclaim was the allegations in Painter's original complaint, which Painter has conceded arose out of or related to his employment, (see D.E. # 32 at 11); the allegations in the amended complaint, which this Court has held did not arise out of or relate to Painter's employment, (see D.E. # 43 at 11–16); or both. For example, the counterclaim asserts that "Painter initiated this lawsuit" in violation of his Separation Agreement. (Defs. Counterclaim ¶¶ 162–163 (emphasis added).) However, elsewhere the counterclaim alleges that "[d]espite representing that his allegations were amended to eliminate all of his employment-related claims, Painter's Amended Complaint still contains allegations and causes of action arising from, and relating to, his employment at Vyera." (Id. ¶ 178.)

At the pre-motion conference, the Court ruled orally that to the extent the counterclaim alleges that the amended complaint constitutes a violation of the Separation Agreement, it is dismissed based on this Court's September 26, 2019 Memorandum and Order, which held that Painter's amended complaint did not assert employment claims against Defendants. (D.E. dated January 9, 2020.) Before the Court is Plaintiff's motion to dismiss the counterclaim, to the extent the counterclaim alleges that the original complaint constitutes a breach of the Separation Agreement. For the reasons stated below, Plaintiff's motion to dismiss is DENIED.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a [counterclaim, like a] complaint[,] must plead enough facts to state a claim that is plausible on

---

[4] On December 2, 2019, Painter filed a motion to dismiss Defendants' counterclaim. (D.E. # 50.) Because he did not first request a pre-motion conference, which is required by this Court's Individual Rule 3(A), the Court terminated the motion as moot and directed Painter to request a pre-motion conference on his anticipated motion to dismiss the counterclaim. (D.E. dated December 3, 2019.)

4

its face." Officemax Inc. v. Cinotti, 966 F. Supp. 2d 74, 78 (E.D.N.Y. 2013) (alterations in original) (internal quotation marks omitted) (quoting Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008)). A counterclaim will survive a motion to dismiss if it sets forth allegations that "nudge[] the[] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2008). But the Court must dismiss the counterclaim if its "well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). In evaluating a counterclaim on a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), but must accept all factual allegations, even the "doubtful" ones, Twombly, 550 U.S. at 555.

## DISCUSSION

### I. Failure to State a Claim

Painter's first argument to dismiss the counterclaim is that Defendants have not satisfied the pleading standard under Rule 12(b)(6) because the counterclaim is "misleading, vague, and conclusory." (D.E. # 56 ("Pl. Br.") at 9–14.) Defendants respond that they have "more than satisfied [the] burden of stating a viable cause of action against Painter in the instant case" by sufficiently alleging each element of breach of contract. (D.E. # 57 ("Defs. Opp'n") at 3–5.)

"Under New York law, there are four elements to a breach of contract claim: '(1) the existence of an agreement, (2) adequate performance of the contract by the [party seeking recovery], (3) breach of contract by the [non-performing party], and (4) damages.'" Katz v. Travelers, 241 F. Supp. 3d 397, 405 (E.D.N.Y. 2017) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)). As laid out in Defendants' opposition brief, Defendants have made allegations to support each element of a breach of contract action. The counterclaim alleges,

5

among other things, that: (1) "Painter was employed by Vyera as Director of Investor Relations under an Employment Contract dated June 6, 2015," (Defs. Ans. & Counterclaim ¶ 159); (2) the parties entered into the Separation Agreement, pursuant to which Vyera paid Painter $100,000 in exchange for a release from all employment claims, (id. ¶¶ 160–161); (3) Painter "initiated this lawsuit" against Defendants "[i]n violation of the explicit terms of the Separation Agreement," which "constitute[d] a material breach of the Separation Agreement," (id. ¶¶ 162–163); and (4) as a result of the breach, Defendants are entitled to the $100,000 Separation Payment, as well as their attorneys' fees and costs for defending the action, (id. ¶¶ 187–188).[5] These allegations are specific and straightforward, not "vague and conclusory" as Painter argues, (Pl. Br. at 9). To the extent they are "misleading," (id.), that is not for the Court to resolve at the motion to dismiss stage, when courts must accept all factual allegations, even the "doubtful" ones. Twombly, 550 U.S. at 555.

Painter argues that "Defendants do not state with the particularity required by Iqbal and Twombly, precisely which causes of action in the original complaint, violate the Employment Separation Agreement, nor do Defendants bother to explain with particularity how Mr. Painter's claims 'arise out of or relate to his employment,' and are thus purportedly barred by the Employment Separation Agreement." (Pl. Br. at 10–11.) Although it is true that there is significant overlap between the original complaint and the amended complaint (found not to arise out of or relate to Painter's employment), the original complaint opens by asserting it is a "civil action brought . . . to redress violation of the terms, conditions and privileges of employment of Plaintiff by the Defendants." (Compl. ¶ 1 (emphasis added).) The fact that Defendants do not

---

[5] As discussed above, Defendants also appear to allege that the amended complaint serves as a basis for the counterclaim. (See Defs. Ans. & Counterclaim ¶¶ 177–178 (alleging that the amended complaint "still contains allegations and causes of action arising from, and relating to, [Painter's] employment").) However, the Court has already dismissed the counterclaim based on the amended complaint on the grounds that this Court has already held that the allegations in the amended complaint concern Painter's investor/investee relationship, rather than his employment relationship, with Defendants.

identify each allegation that they now allege offends the Separation Agreement is not fatal to their counterclaim on a motion to dismiss.

## II. Reliance on Original Complaint

Painter's next argument is that Defendants cannot counterclaim against the original complaint because it is not the operative pleading in this case. (Pl. Br. at 14–15.) Defendants contend that the fact that the original complaint is no longer the operative complaint does not bar their counterclaim because "[t]he act of commencing a legal action, like the Original Complaint, which contained employment-related causes of action explicitly barred under the Separation Agreement, is sufficient enough to trigger the attorney's fee provision in the Separation Agreement." (Def. Br. at 6–7.) Painter does not cite to any authority for the proposition that Defendants cannot counterclaim based on a non-operative pleading.[6] Rather, he argues that "[t]he clear purpose of Section 5 of the Employment Separation Agreement was to protect the Defendants from live claims related to employment," and "the only live complaint in this dispute – the Amended Complaint – does not relate to employment issues." (Pl. Br. at 56.) Painter does not elaborate on this argument at all, nor does he even reference the text of the Separation Agreement in an effort to explain why it so clearly, according to him, relates only to live disputes. The Court declines to grant Painter's motion based on this underdeveloped argument.

---

[6] Defendants criticize Painter for "fail[ing] to cite a single case supporting th[e] proposition [that Defendants cannot counterclaim based on the original complaint] because such an argument is nonsensical and would render release provisions in settlement agreements useless." (Def. Br. at 6.) However, the Court notes that Defendants do not cite any authority for why their position—that they can counterclaim based on the original complaint—is correct. (See generally Def. Br. at 6–7.)

### III. Claim for Attorneys' Fees

Painter also argues that Defendants' claim for attorneys' fees must fail on the grounds that (1) Defendants would have moved to dismiss regardless of whether there were any employment claims, which made up only a small portion of Painter's original claims; and (2) Defendants' counsel behaved unethically vis-à-vis disclosure of the Separation Agreement[7] and Employment Agreement and in communicating directly with Painter when he was represented by counsel. (Pl. Br. at 15–17.) Defendants respond that "[b]oth of these arguments are irrelevant, purely factual, and therefore patently improper for the Court to consider on a motion to dismiss." (Def. Br. at 7.) The Court agrees with Defendants.

On a motion to dismiss, the district court's role is to "consider the legal sufficiency of the [here, counterclaim], taking its factual allegations to be true and drawing all reasonable inferences in the [non-movant's] favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). As explained above, Defendants' counterclaim is on its face sufficient to state a claim against Painter for breach of the Separation Agreement. As it relates to attorneys' fees, the counterclaim alleges that the Separation Agreement specifically provided that if violated, Painter would reimburse Defendants for the cost of defending the action, including attorneys' fees and costs. (Defs. Ans. & Counterclaim ¶ 172.) Whether, as Painter attempts to argue, Defendants would have moved to dismiss and thus expended attorneys' fees regardless of whether the original complaint contained employment claims, is not a determination for the Court to make at this stage. Similarly, whether a purported

---

[7] Painter's brief alternates between referring to a "Separation Agreement" and a "Settlement Agreement." The Court assumes Painter is at all times referring to the Separation Agreement, whereby he released Defendants from all claims arising out of or related to his employment in exchange for the Separation Payment.

ethics violation invalidates the Separation Agreement is likewise not an issue that can be resolved on a motion to dismiss.[8]

## CONCLUSION

For the reasons stated above, Painter's motion to dismiss Defendants' counterclaim is DENIED.

SO ORDERED.

Dated: June 1, 2020
      Brooklyn, New York

                                            /s/ Carol Bagley Amon
                                            Carol Bagley Amon
                                            United States District Judge

---

[8] Painter further argues without any analysis that if this counterclaim goes forward, he wishes to reinstate his breach of contract causes of action. The Court declines to grant that relief on this record.